## BUCKLEY v. MORTON et al.

No. 11796—Opinion Filed Oct. 23, 1923.

1. Contracts—Remedy Part of Obligation.

The remedy subsisting in a state or territory when and where a contract is entered into and to be performed, is a part of the obligation.

2. Same—Summary Sale Under Deed of Trust Executed in Indian Territory—Validity—Constitutional Law.

A summary sale and conveyance of real estate under a mortgage with power of sale, or deed of trust, executed in the Indian Territory before statehood, which sale and conveyance were made under the laws of Oklahoma after statehood, but in substantial compliance with the provisions of Mansfield's Digest of the Laws of Arkansas, in force in the Indian Territory at the time such deed of trust was made between the parties, is valid; and to deny the remedy of such summary sale under the laws of Oklahoma after the coming of statehood would be, in effect, a viola-

tion of section 10, art. 1 of the Constitution of the United States, which provides that no state shall pass any law impairing the obligations of a contract.

3. Same — Subsisting Remedy — Preserved by Schedule of Constitution.

In such case, said remedy of summary sale (under the laws of Oklahoma) after statehood in substantial compliance with the laws in force in Indian Territory, prior to statehood, cannot be denied to a party invoking same on the ground that such party might have pursued other remedy and procedure under the laws of Oklahoma · after statehood to foreclose such deed of trust, since such remedy of summary sale was continued and preserved after statehood by section 1 of the Schedule of the Constitution of Oklahoma.

(Syllabus by Estes, C.)

Commissioners' Opinion, Division No. 2.

Error from Superior Court, Okmulgee County; H. R. Christopher, Judge.

Action by Charity Buckley against O. A. Morton et al. From judgment in favor of defendants, plaintiff appeals. Affirmed.

J. M. Hays and E. W. Smith, for plaintiff in error.

Jarrett & Speakman and O. A. Morton, for defendants in error.

Opinion by ESTES, C. Plaintiff in error, as plaintiff, sued Viola B. Saffell et al., defendants in error, as defendants, to quiet title to certain real estate in Okmulgee county and to cancel certain conveyances of record as clouds thereon. Plaintiff was a citizen of the Creek Nation of the one-half blood and received said land as a part of her allotment. The cause was dismissed as to all defendants, except Viola B. Saffell. On October 17, 1907, being about 30 days before the taking effect of the Constitution and laws of the state of Oklahoma, on the coming of statehood, plaintiff executed and delivered to O. A. Morton, an attorney, a mortgage on such real estate, containing power of sale, to secure her note for $950 for legal services rendered by said attorney, such note maturing in two years. It is conceded that she had the authority to execute said mortgage or deed of trust. In 1910, on default in the payment of said note, said Morton sold and conveyed said real estate to one Mrs. Cone, his sister, and by mesne conveyances and by the will of one Bounton, same became the property of defendant Saffell, the sister of Bounton. Plaintiff admitted the execution of the original note and deed of trust to Morton but claimed that the title of defendant Saffell

.failed because of the defects hereinafter pointed out in said sale under· said trust deed. On trial to the court judgment was rendered for the defendant, Saffel, quieting title against the plaintiff, .who brings error.

The errors assigned by plaintiff are argued under; the proposition that there was no .remedy under the Constitution and laws of Oklahoma after the·coming of statehood for the advertisement, sale, and conveyance of said real estate by .said Morton to said Cone in the summary manner in which same was done, and that· therefore the conveyance from Morton to Cone was void and that defendant Saffell could claim no rights in said real estate thereunder. The said mortgage, with power to sell and convey, was executed in pursuance of Mansfield's Digest of the Laws of Arkansas in force in the Indian Territory at the time of the execution of said note and mortgage. Thereby, among other things, it was provided that in case of nonpayment, the mortgagee should have power to sell the property at public sale on public notice of the time and place given by advertising in the newspaper or by posting notices in ten public places; and authorized a conveyance by the mortgagee of the property to such purchaser. Said Mansfield's Digest also provided, among other things, that the mortgagor should apply to the nearest justice of the peace for the appointment of appraisers, and that such justice should appoint three disinterested householders of the county, who should subscribe an oath, view and appraise the property, and that they, or any .two of them, should make a report of their appraisement in writing to be delivered to the person making the sale; and that where the sole consideration of the mortgage was money loaned, such appraisement might be waived. The consideration of the mortgage in controversy was .for services and · such appraisement was necessary. In 1910, under the laws of Oklahoma when the sale was made herein, only two appraisers were appointed by a justice of the peace ·and only two reported. Plaintiff contends that this was not a strict compliance with the laws of Arkansas, under which said deed of trust was executed. · It may safely be presumed that if a third appraiser had been appointed it could not have changed the result of the appraisement. No fraud as to the appraisement or sale is charged. It is not claimthat the property did not sell for two-thirds of its appraised value or for its fair and reasonable value. Nor is it contended that

plaintiff was prejudiced in any manner by the appointment and report of two instead of three appraisers. Nor does it appear that .such appraisement was invalid under the laws then in force. In this connection, plaintiff also contends that since there was no provision of the statutes of Oklahoma in 1910 authorizing a justice of the peace to appoint appraisers for such purpose, that the appraisement was void and therefore the sale was void. Plaintiff also points out that the statutes of Oklahoma then in force required that in actions to enforce a mortgage, deed of trust or other lien or charge, a personal judgment shall be rendered for the amount due, and for a sale of the property charged, and the application of the proceeds, and that no real estate shall be sold for the payment of any money, in security for which it may have been pledged or assigned, except in pursuance of a judgment of a court of competent jurisdiction ordering such sale, and that on account of said statutes the sale herein was void.

We prefer to discuss these contentions together. The first contention involves the question of whether or not the remedy which was pursued by Morton in this particular sale was carried over into statehood. If the remedy invoked by Morton was saved to him under the change in government, then the contention of plaintiff that Morton should have procured a judgment for the amount due and should have proceeded otherwise under the statute referred to, is not tenable. If the remedy pursued was saved to Morton in the transition in government, then the remedy referred to in the statutes of Oklahoma, by first procuring judgment and then an order of sale, was not exclusive as to Morton in this case.

"The remedy subsisting in a state when and where a contract is made and is to be performed is a part of its obligation; and any subsequent law of the state which so affects that remedy as substantially to impair and lessen the value of the contract is forbidden by the · Constitution of the United States, and therefore void" Edwards v. Kearzey, 96 U. S. 595, 24 L. Ed. 793; Muller v. McCann et al., 50 Okla. 710, 151 Pac. 621, 626.

Wherefore it appears that the remedy pursued by Morton in the sale of this land in 1910 by summary sale was secured to him by the laws in force in Indian Territory under his contract or deed of trust with the plaintiff. He cannot be denied that remedy under the laws of Oklahoma without impairing the obligation to his

contract, and thus offend against section 10, art. 1, of the Constitution of the United States. It follows as a corollary, that he was not required to proceed under the statutes of Oklahoma by first obtaining a judgment and an order of sale in a court of competent jurisdiction, and that the latter remedy was not exclusive and did not preclude Morton from pursuing the remedy he did invoke. This follows because the remedy for summary sale subsisting in the Indian Territory when and where this contract was made, was a part of its obligation. In Purcell v. Barnett et al., 30 Okla. 605, 613, 121 Pac. 231, it is said:

"It is a rule so well established that citation of authority is unnecessary that the law of the land enters into and forms a part of every valid contract, and the enforcement of this contract requires a full consideration of the rights of the parties thereto, and those rights having been fixed and determined by the laws of Arkansas must also be enforced thereunder. If the question was one only of procedure we could agree with the contention of counsel, but it involves more than procedure; it involves the rights of parties as fixed by solemn contract, which rights are guaranteed to the parties by virtue of the Schedule of the Constitution of the state."

Not only was such remedy of summary sale a part of the obligation, but same was continued by section 1 of the Schedule of the Constitution of Oklahoma, which provides:

. "No existing rights, actions, suits, proceedings, contracts or claims shall be affected by the change in the form of government, but all shall continue as if no change in the form of government had taken place. * * *"

It follows that the judgment of the lower court should be, and is, affirmed.

· By the Court: It is so ordered. ·